Kirk CRAWFORD, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–11441.

Supreme Court of Alaska.

June 30, 2006.

the issue of prior expressed wishes, and Myers has not pursued that point on appeal.

Brent R. Cole and Colleen J. Moore, Marston & Cole, P.C., Anchorage, for Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Respondent.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Kirk Crawford was arrested for reckless driving. After Crawford was removed from his vehicle, handcuffed, and placed in the backseat of a police car, an Anchorage police officer searched the unlocked center console

of Crawford's vehicle and found a small amount of crack cocaine. Crawford claimed the warrantless search of the console was unconstitutional. The court of appeals upheld the search on the theory the officer had a reasonable and articulable basis for his suspicion that the console contained a weapon. We hold that the search was reasonable because the unlocked center console of a vehicle is an item immediately associated with the driver's person. As such, an unlocked center console can be searched incident to arrest without a warrant if it was within the arrestee's immediate control at the time of the arrest and the search was reasonably contemporaneous with the arrest. We therefore affirm.

## II. FACTS AND PROCEEDINGS

### A. Background

Kirk Crawford was driving northbound on I Street in Anchorage in his Chevrolet Tahoe on March 23, 2000.[1] Anchorage Police Department Officer Christopher Ritala, sitting in his police car on the west side of I Street at the corner of 15th Avenue, saw Crawford's vehicle approaching and estimated that it was traveling about fifty miles per hour, twenty miles per hour over the speed limit. He radioed Officer Indrek Oruoja, who was positioned on the west side of I Street at the corner of 14th Avenue. Officer Oruoja got a radar reading of fifty miles per hour on Crawford's vehicle. Officer Oruoja turned on his lights and siren and followed Crawford. Officer Oruoja testified that he saw Crawford change from the far right lane to the far left lane, accelerate, then change back to the far right lane without using signals. Officer Oruoja testified that the speeding and erratic lane-changing made him think that "something [was] going on with this guy" and he decided to arrest Crawford for reckless driving.

Officer Oruoja caught up with Crawford just before 9th Avenue; Crawford pulled over in traffic on I Street. With his vehicle loudspeaker, Officer Oruoja instructed Crawford to pull onto 9th Avenue to clear traffic. Officer Oruoja testified that during this time Crawford repeatedly glanced in his rearview mirror and was fidgeting in the driver's seat as if moving objects around. Officer Oruoja observed that Crawford was specifically making motions down to his lap area and to his right. Officer Oruoja testified that his observation of those acts concerned him "from a standpoint of safety." He was concerned that Crawford could either be concealing or producing a weapon.

Officer Oruoja testified that, as he approached Crawford's vehicle, Crawford "appeared to be very nervous, kind of agitated, jumpy." Officer Oruoja classified Crawford's nervousness as "different," striking him as "suspicious instead of just being nervous." Officer Oruoja testified that he was worried about weapons at that point.

Officer Oruoja opened Crawford's driver-side door to "get a clear view of his hands and what was going on inside the vehicle." He testified that Crawford continued to act nervous so he asked Crawford to get out of the vehicle; the officer guided Crawford by his jacket sleeve and Crawford complied. As Crawford got out, Officer Oruoja saw the handle of a baseball bat wedged between the driver's seat and the center console.

Officer Oruoja had called for assistance when he began pursuing Crawford, and Officer Ritala responded. Officer Ritala and Officer Oruoja restrained Crawford with handcuffs. Officer Oruoja told Crawford that he was under arrest for reckless driving. About the time Crawford was being put into Officer Oruoja's police car, Officer Oruoja told Officer Ritala that he had seen a baseball bat in the car. Officer Ritala testified that he kept an eye on Crawford in the backseat of Officer Oruoja's patrol car while Officer Oruoja returned to Crawford's vehicle to search it. Both Officer Ritala and Officer Oruoja admitted that Crawford was handcuffed in the back seat of the police car when Officer Oruoja first searched Crawford's car. Officer Oruoja testified that, before searching Crawford's vehicle, he had no indication that Crawford had committed any crime other than reckless driving. Officer Oruoja testi-

1. The facts are derived from the testimony of Officer Ritala, Officer Oruoja, and Crawford at the superior court's hearing on Crawford's motion to suppress the drug evidence.

fied that he suspected Crawford had weapons based on his experience and that he "routinely" found firearms on people or concealed in vehicles in similar situations.

Officer Oruoja testified that he searched "[t]he console, underneath the driver's seat ... anything within immediate reach of [Crawford]" to look for a weapon. He explained that, as he approached where Crawford had been seated, he noticed that the lid to the center console was ajar and that some currency was hanging out. When he first saw the compartment ajar, Officer Oruoja was thinking that "there could be some sort of a weapon inside." He testified that, in his experience, many center consoles have multiple compartments of various sizes, but that he can conceal his service weapon in his personal vehicle's center console. Officer Oruoja opened the console and saw cash and what he recognized to be a chunk of crack cocaine and a metal rod commonly used to smoke crack cocaine. He did not find any weapons.

Crawford was taken before a magistrate and then incarcerated in the Cook Inlet Pretrial Facility. An inventory search of his person revealed a used glass crack pipe in his jacket, a straw with cocaine residue, a $20 bill containing seven rocks of cocaine, and $331 in cash.

## B. Prior Proceedings

Crawford was indicted for possession of a schedule IIA controlled substance, a class C felony. He moved to suppress the drug evidence, arguing that the search did not fall within any of the exceptions to the warrant requirement. The state's opposition contended that the search of Crawford's vehicle was justified under the search incident to lawful arrest exception to the warrant requirement.

The superior court heard the testimony of three witnesses: Officer Ritala, Officer Oruoja, and Crawford. Superior Court Judge pro tem. John R. Lohff stated that *Chimel v. California*[2] applied the doctrine of search incident to lawful arrest to vehicle searches and authorized a search of "the arrestee's person and the area 'within his immediate control' [3]—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (Citation added.) The superior court noted that *Dunbar v. State*[4] "approved of a search of a glove compartment in an investigative stop of suspects in an armed robbery" and found that *Dunbar* "clearly stated the same limits applied there that would also apply in a search incident to arrest." The superior court held that containers such as a glove box or console could be searched if they were "within the suspect[']s 'immediate control.'" It denied Crawford's motion to suppress.

Crawford pleaded no contest to fourth degree misconduct involving a controlled substance and appealed the denial of his suppression motion.[5] On appeal, the court of appeals recognized that an officer can "search the area within the arrestee's reach at the time the arrest was made" even after "the arrestee has been removed from the immediate area, or has been restrained, or both, at the time the search is conducted."[6] But the court of appeals stated that "special rules ... govern police authority to open and search closed containers that they find within this area."[7] The court held that a center console was not an object "immediately associated with the person" and thus "a warrantless search of the console is permissible only if the police have reason to believe that it contains a weapon or that it contains evidence of the crime for which the driver has been arrested."[8] Because Crawford was ar-

---

2. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

3. *Id.* at 763, 89 S.Ct. 2034.

4. *Dunbar v. State*, 677 P.2d 1275, 1277 (Alaska App.1984).

5. *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

6. *Crawford v. State*, 68 P.3d 1281, 1284 (Alaska App.2003) (*Crawford I*).

7. *Id.* at 1284.

8. *Id.*

rested for reckless driving,[9] it reasoned that the search of his center console could be justified only if the arresting officer had "reason to believe that the console contained a weapon."[10] The court of appeals remanded to the superior court to "make findings as to whether there was an articulable and reasonable basis to believe that the center console of Crawford's vehicle might contain a weapon."[11]

The superior court found on remand that Officer Oruoja had an articulable and reasonable basis to conclude that the center console might contain a weapon. The court stated that "Crawford's behavior justified a conclusion that he was dangerous to the public as a whole as well as to Officer Oruoja." The court based its finding on Officer Oruoja's experience as a patrol officer and his application of this experience when observing Crawford.

Crawford again appealed, contending that the superior court's findings were not supported by the evidence.[12] The court of appeals held that there was substantial evidence in the record to support the superior court's findings.[13] The court of appeals therefore held that the findings were not clearly erroneous and upheld the search as reasonable.[14]

Crawford filed a petition for hearing. We granted the petition and ordered full briefing on the merits and on the issue of whether Crawford's center console was an item immediately associated with the person.[15]

## III. DISCUSSION

### A. Standard of Review

In reviewing a superior court's denial of a motion to suppress, we view the facts in a light most favorable to upholding the ruling.[16] Factual findings will not be disturbed unless they are clearly erroneous.[17] Whether factual findings support the court's legal conclusions is a question of law that we decide de novo.[18] We can sustain a ruling on any theory supported by the record regardless of whether that theory formed the basis for the lower court's decision.[19]

### B. The Search of Crawford's Center Console Was Constitutional.

A warrantless search is per se unreasonable unless it falls within one of the recognized exceptions to the warrant requirement.[20] One of the four exceptions recognized in Alaska is search incident to lawful arrest.[21] Search incident to lawful arrest allows the warrantless search of the area " 'within [the arrestee's] immediate control' " at the time of the arrest to ensure officer safety and to preserve evidence related to the crime.[22] But special rules govern when

9. We have noted that the search of a container incident to an arrest for reckless driving could not be justified by a need to preserve evidence because no evidence associated with reckless driving could be stored in a container. *Hinkel v. Anchorage*, 618 P.2d 1069, 1070 (Alaska 1980).

10. *Crawford I*, 68 P.3d at 1284.

11. *Id.* at 1285.

12. *Crawford v. State*, 87 P.3d 824, 826 (Alaska App.2004) (*Crawford II* ). Crawford also argued that the superior court exceeded its authority by hearing additional testimony before entering its findings on remand. *Id.* at 825. The court of appeals recognized the power of the superior court to "take additional evidence, in its discretion, so that it could meet its obligation to enter the additional findings." *Id.* Crawford's petition does not seek review of this determination.

13. *Id.* at 826.

14. *Id.*

15. We also asked the parties to brief two other issues that are not relevant to our disposition of this case.

16. *State v. Joubert*, 20 P.3d 1115, 1118 (Alaska 2001).

17. *Id.*

18. *Id.*

19. *Id.*

20. *Erickson v. State*, 507 P.2d 508, 514 (Alaska 1973).

21. *See McCoy v. State*, 491 P.2d 127, 130 (Alaska 1971).

22. *Id.* at 133 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

closed containers can be searched incident to a lawful arrest and without a warrant.[23]

■ Unless exigent circumstances exist, an officer must first seize items that are not "immediately associated with the person" and then obtain a search warrant to inspect their contents.[24] In *Metcalfe v. State*, we quoted with approval the following passage from *United States v. Chadwick:*

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.[ [25] ]

But when an item is "immediately associated with the person," no exigency is required to search the item incident to arrest.[26]

■ The court of appeals ultimately upheld the search of Crawford's center console because there was substantial evidence to support the superior court's finding on remand that Officer Oruoja had a reasonable and articulable basis for his belief that the console might contain weapons.[27] The court of appeals reasoned that this finding was necessary to justify the search because the court of appeals had previously determined that the console was not an item "immediately associated with the person." [28] We affirm the court of appeals's decision affirming the superior court's judgment [29] but for the reason that the search of Crawford's center console was permissible because the console was an item immediately associated with Crawford's person.

The court of appeals concluded that the center console in a vehicle is more akin to a briefcase, an item which is not immediately associated with the person,[30] than a purse or jacket, items which are immediately associated with the person.[31] Because the court of appeals determined that the console was not immediately associated with the person, it concluded that "when the police arrest the driver of a vehicle, they are not authorized to search the center console of that vehicle as a matter of course." [32]

Crawford contends that this conclusion of the court of appeals is correct because "[t]he console of a vehicle is a permanent part of

**23.** *Hinkel v. Anchorage*, 618 P.2d 1069 (Alaska 1980) (distinguishing between items "immediately associated with the person" and those that are not).

**24.** *Id.* at 1071; *see also Metcalfe v. State*, 593 P.2d 638, 640 (Alaska 1979) (holding that box held by suspect when arrested could not be searched without warrant).

**25.** *Metcalfe*, 593 P.2d at 640 (quoting *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).

**26.** *Hinkel*, 618 P.2d at 1071 (observing that exigent circumstances are not required to search personal property "immediately associated with the person of the arrestee").

**27.** *Crawford II*, 87 P.3d 824, 826 (Alaska App. 2004). In Crawford's first appeal, the court of appeals remanded to the superior court for findings on whether Officer Oruoja had a "reasonable and articulable basis" for his belief that the center console might have contained a weapon. *Crawford I*, 68 P.3d 1281, 1285 (Alaska App. 2003). The superior court found on remand that Officer Oruoja did have a reasonable and articulable basis for believing that Crawford's console contained a weapon. In Crawford's second appeal, the court of appeals upheld the search,

holding that there was substantial evidence to support the superior court's finding. *Crawford II*, 87 P.3d at 826. Crawford now argues that there was inadequate evidence to support the superior court's finding. Because we hold that the center console is an item immediately associated with the person, the challenged finding is irrelevant to our analysis. We therefore do not address the merits of Crawford's inadequate-evidence argument.

**28.** *Crawford I*, 68 P.3d at 1284.

**29.** *Crawford II*, 87 P.3d at 826.

**30.** *Hinkel*, 618 P.2d at 1071–72 (citing with approval *United States v. Berry*, 560 F.2d 861, 864 (7th Cir.1977), *vacated on other grounds*, 571 F.2d 2 (7th Cir.1978)) (classifying attaché case as luggage and not immediately associated with person).

**31.** *Crawford I*, 68 P.3d at 1284; *see also Hinkel*, 618 P.2d at 1072 (holding purse was item immediately associated with arrestee); *Dunn v. State*, 653 P.2d 1071, 1083 (Alaska App.1982) (holding jacket was item immediately associated with arrestee).

**32.** *Crawford I*, 68 P.3d at 1284.

the vehicle. It cannot possibly be carried about or worn by a person." The state argues that a vehicle's console functions similarly to a purse and that "[g]iven the typical use of vehicle consoles and the fact that they are always in the immediate proximity of a driver, they should be classified as immediately associated with a person."

We have previously interpreted the phrase "items immediately associated with the person" to mean that:

> [C]ontainers found in clothing pockets may be searched. In our view ... containers such as purses which are often worn on the person and generally serve the same function as clothing pockets are also excepted from the strict exigency requirement. It would be possible, of course, to treat containers found in clothes pockets, such as billfolds, differently from items such as purses which are not carried in pockets but serve the same purpose. However, we can think of no reasons to justify such a distinction.[ [33] ]

In *Hinkel*, we referred to *United States v. Berry* for guidance in classifying which items are "immediately associated with the person." [34] In *Berry*, the Seventh Circuit held that an attache case was not "immediately associated with the person." [35] The Seventh Circuit considered the attache case's common usage and held that "a briefcase is not an item carried on an individual's person in the sense that his clothing or items found in his pocket are." [36] The court reasoned that, unlike a purse, an attache case may not always be carried with the person but is more like luggage in that it is often out of a person's reach—in *Berry*, the suspect had retrieved the attache case from the trunk of a car. [37] The court also recognized that a suspect's expectation of privacy diminishes after a lawful arrest, such that a search of the suspect's person and pockets is reasonable. [38] But the court held that the search of the interior of the attache case constituted a " 'far greater intrusion into Fourth Amendment values.' " [39]

Following the reasoning of *Hinkel* and *Berry*, we conclude here that a vehicle's center console can be an item immediately associated with the driver's person. When a driver is seated in the vehicle, the center console can "generally serve the same function as clothing pockets." [40] Like a pocket, the center console is commonly used to hold money, a cellular telephone, and personal hygiene items. Unlike a briefcase, which can be placed in the trunk or otherwise made inaccessible to the driver, the center console is permanently located directly next to the driver. Unless the console is locked, we can see no reason why a driver would have a greater expectation of privacy in the center console than in his or her purse or wallet. [41]

Crawford argues that his center console is "easily distinguished" from the purse in *Hinkel* because "the purse was being re-

---

**33.** *Hinkel,* 618 P.2d at 1071.

**34.** *Id.* at 1072.

**35.** *United States v. Berry,* 560 F.2d 861, 864 (7th Cir.1977), *vacated on other grounds,* 571 F.2d 2 (7th Cir.1978).

**36.** *Id.*

**37.** *Id.*

**38.** *Id.; see also United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467 (1973). *Robinson* states:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful

custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment. *Id.*

**39.** *Id.* (quoting *United States v. Chadwick,* 433 U.S. 1, 13 n. 8, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).

**40.** *Hinkel,* 618 P.2d at 1071.

**41.** *See Chadwick,* 433 U.S. at 11, 97 S.Ct. 2476 (holding that placing item inside double-locked footlocker "manifested an expectation that the contents would remain free from public examination"); *see also State v. Stroud,* 106 Wash.2d 144, 720 P.2d 436, 441 (1986) (noting that police may not conduct warrantless search of vehicle's locked glove compartment, in part because act of locking shows individual "reasonably expects the contents to remain private").

turned to [Hinkel] in accordance with police policy at the time it was searched." Crawford claims that the *Hinkel* rule does not allow the search of a center console when the arrestee no longer has access to it. But *Hinkel* does not depend on an arrestee's access to the item at the time of the search. If an item is classified as "immediately associated with the person" and the arrestee had access to the item at the time of the arrest, as we saw above, an officer is justified in searching the item even after the arrestee is detained so long as the search is reasonably contemporaneous with the arrest.[42]

■ Crawford contends that classifying a center console as "immediately associated with the person" would greatly expand the rule and "allow the search of a vehicle in the driveway of a person arrested in his yard." But that argument ignores the first requirement for a warrantless search if it is to be a legal search incident to arrest. The initial inquiry is whether the arrestee had access to the item at the time of arrest.[43] The "immediately associated with the person" distinction is irrelevant unless the item was accessible to the suspect at the time of arrest.[44] An officer cannot search an item, even one that is "immediately associated with the person," without a warrant if that item was not in the arrestee's immediate control at the time of the arrest.[45]

■ Crawford argues that, aside from the distinction for items "immediately associated with the person," the general justifications underlying the search incident to arrest exception do not support the search of his console. The Supreme Court in *Chimel v. California* held that, in conducting a search incident to arrest, police officers could search the area "within [the arrestee's] immediate control" because of a concern for officer safety and a need to prevent evidence concealment or destruction.[46] It is undisputed that because Crawford was arrested for reckless driving, there was no concern about evidence destruction.[47] Crawford contends that, because he was handcuffed in the backseat of a police car at the time of the search, there was also no threat to officer safety. But we have held that the twin rationales for search incident to arrest outlined in *Chimel* apply only to define the search area; they do not regulate the scope or intensity of the search.[48] Once the area "within the arrestee's immediate control" is defined, the search need not be justified by officer safety or evidence preservation. Warrantless searches of items immediately associated with the person are justified even after the arrestee is in police custody because, by their nature, they do not involve "any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself."[49] The search can occur at any time reasonably contemporaneous with the arrest[50] because

---

42. *Hinkel*, 618 P.2d at 1071; *see also McCoy v. State*, 491 P.2d 127, 138 (Alaska 1971) (holding that search must be "roughly contemporaneous" with arrest to be reasonable under search incident to arrest exception).

43. *See State v. Ricks*, 816 P.2d 125, 125 (Alaska 1991) (holding that there was no exigency to justify search of jacket which was ten to fifteen feet from arrestee at time of arrest).

44. *Hinkel*, 618 P.2d at 1072 (holding that distinction between items immediately associated with person and those not immediately associated with person comes into play "once any danger that the arrestee may gain access to the container to seize a weapon or destroy evidence no longer exists").

45. *Ricks*, 816 P.2d at 125 (holding that there was no exigency to justify search of jacket that was ten to fifteen feet from arrestee at time of arrest).

46. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

47. *See Hinkel*, 618 P.2d at 1070 (observing that there is no concern for evidence destruction in context of reckless driving).

48. *McCoy*, 491 P.2d at 133 ("While it is clear from *Chimel* that the twin rationales ... supply the appropriate analytic scheme to define the area 'within (the arrestee's) immediate control', it by no means follows that they also supply the appropriate analysis for limiting searches of the arrestee's person....").

49. *Hinkel*, 618 P.2d at 1072 (quoting *United States v. Berry*, 560 F.2d 861, 864 (7th Cir.1977), *vacated on other grounds*, 571 F.2d 2 (7th Cir. 1978)).

50. *McCoy*, 491 P.2d at 138 (holding that search must be "roughly contemporaneous" with arrest to fall within search incident to arrest exception to warrant requirement).

"[w]hile the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection."[51]

We have upheld searches of items immediately associated with the person when the search occurred thirty to forty-five minutes after the suspect was detained.[52] Officer Oruoja testified that he returned to Crawford's vehicle and searched the console after he and Officer Ritala placed Crawford in the backseat of Officer Oruoja's car. The search of Crawford's console therefore occurred within a reasonable time of his arrest.

We hold that an unlocked center console of a motor vehicle is an item immediately associated with the person of the driver. Crawford's center console was immediately accessible to him when he was removed from his vehicle and arrested and the search of the console occurred reasonably contemporaneously with his arrest. The search in this case was therefore a valid warrantless search incident to arrest.[53]

## IV. CONCLUSION

Because we conclude that the search of Crawford's center console was a reasonable search incident to arrest, we AFFIRM.

MATTHEWS, Justice, concurring.

The rule of decision of today's opinion can be stated as follows. Containers that are (1) immediately associated with the person of an arrestee, and (2) within the arrestee's immediate control when he is arrested, may be searched without a warrant as an incident to the arrest, (3) so long as the search is reasonably contemporaneous with the arrest. Since the center console of an automobile is (1) a container immediately associated with the person of the automobile driver, (2) was in the immediate control of the driver, Crawford, when he was arrested, and (3) the search was contemporaneous with the arrest, the search of the console was valid as a search incident to arrest.

In my view the first premise, that a container must be an item immediately associated with the person in order to be searched, is unnecessary. Containers must be within reach of the arrestee at the time of arrest, but whether containers can be described as items immediately associated with the person of the arrestee is irrelevant, as long as the search is reasonably contemporaneous with the arrest.

The seminal case of *Chimel v. California*[1] expresses the rule that I believe should apply. The *Chimel* Court stated that a closed desk drawer within reach of the person arrested could be searched, and did so without conditioning the legality of the search on whether the drawer was an item immediately associated with the person of the arrestee. Here is the language from *Chimel* that I think is important:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, danger, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of

---

**51.** *Id.* at 137 (quoting *United States v. DeLeo,* 422 F.2d 487, 493 (1st Cir.1970)).

**52.** *Id.* at 128 n. 1, 130–31; *cf. Middleton v. State,* 577 P.2d 1050, 1055 (Alaska 1978) (upholding search of wallet which involved opening and reading piece of paper twenty to thirty minutes after suspect arrived at police station); *Lemon v. State,* 514 P.2d 1151, 1158 (Alaska 1973) (holding that short delay between bringing suspect to station house and search and seizure of

clothing fell within "reasonably contemporaneous" guideline of *McCoy*).

**53.** Because we can affirm by applying the "immediately associated with the person" standard that has been recognized in Alaska since 1979, it is not necessary here to consider the broader question addressed by the concurrence.

**1.** 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence.[2]

In *New York v. Belton*,[3] the Supreme Court of the United States reiterated the *Chimel* rule that contents of closed containers within the reach of the arrestee at the time of the arrest may be searched:

Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. Thus, while the Court in *Chimel* held that the police could not search all of the drawers in an arrestee's house simply because the police had arrested him at home, the Court noted that drawers within an arrestee's reach could be searched because of the danger their contents might pose to the police.[4]

The *Belton* Court was discussing "any containers found within the passenger compartment" of an automobile when a person in the automobile is arrested.[5] Again, no mention is made of any requirement that the containers be capable of being described as items associated with the person of the arrestee.

The "immediately associated with the person" language was first referred to by this court in *Metcalfe v. State*,[6] and was subsequently employed in *Hinkel v. Anchorage*.[7] These cases relied on a 1977 decision of the Supreme Court of the United States, *United States v. Chadwick*.[8] The facts of *Chadwick* as summarized in *Metcalfe* were as follows:

In *Chadwick* federal agents lawfully seized a locked footlocker from the open trunk of an automobile during the arrest of those in possession of the footlocker. More than an hour after the arrests, acting with probable cause to believe that the footlocker contained contraband drugs, but without a warrant, the agents opened the footlocker and found large amounts of marijuana.[9]

The *Metcalfe* court proceeded to explain its understanding of the *Chadwick* holding, stating:

The United States Supreme Court, in an opinion by Burger, C.J., held the search invalid. More specifically the court held that the privacy interests protected by the Fourth Amendment extended to the footlocker, that the footlocker search was not justified under the "automobile exception," and that no exigent circumstances were present which could justify the search without a warrant. Nor could the search be justified as one incident to arrest, for as the court observed:

Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

433 U.S. at 15, 97 S.Ct. 2476 (footnote omitted).[10]

---

**2.** *Id.* at 763, 89 S.Ct. 2034.

**3.** 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

**4.** *Id.* at 461, 101 S.Ct. 2860.

**5.** *Id.* at 460, 101 S.Ct. 2860. The *Belton* Court defined the term "container" as denoting "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at 461 n. 4, 101 S.Ct. 2860.

**6.** 593 P.2d 638 (Alaska 1979).

**7.** 618 P.2d 1069 (Alaska 1980).

**8.** 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

**9.** *Metcalfe*, 593 P.2d at 640.

**10.** *Id.*

Based on the quote used by the *Metcalfe* court, one might think that *Chadwick* held that personal property not immediately associated with the person of the arrestee could not be searched without a warrant once police have reduced it to their exclusive control. But when more of the language used by the *Chadwick* Court concerning this issue is considered, this conclusion becomes less clear. A more contextual reading suggests that the *Chadwick* search was not valid as a search incident to arrest because the search took place at a time and place remote from the arrest and was of an item not immediately associated with the person, rather than, as suggested by the fragment in the *Metcalfe* opinion, because the search was of a container not immediately associated with the person that was in the exclusive control of the police. A complete excerpt of this portion of the *Chadwick* rationale follows:

Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Terry v. Ohio*, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either *if the "search is remote in time or place from the arrest,"* Preston v. United States, 376 U.S. [364] at 367, 84 S.Ct. [881] at 883 [11 L.Ed.2d 777 (1964)] or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or

destroy evidence, a search of that property is no longer an incident of the arrest.

*Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody;* the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency.[ [11]]

The *Chadwick* holding thus could have been based on two theories. The first, which is suggested by the language quoted in *Metcalfe*, is that once arresting officers have possession of a container not immediately associated with the person it may not be searched under the search incident to an arrest rationale. The second is that when arresting officers search a container that was previously in the possession of an arrestee but the search takes place at a time and place remote from the arrest, the search may not be justified as a search incident to an arrest unless the container is an item immediately associated with the person of the arrestee.

Four years after *Chadwick* was decided, the United States Supreme Court in *Belton* interpreted *Chadwick* as holding simply that a container search that is not close in time or place to the arrest cannot be justified as a search incident to arrest. Speaking of *Chadwick*, and another case, the Court stated:

But neither of those cases involved an arguably valid search incident to a lawful custodial arrest. As the Court pointed out in the *Chadwick* case: "Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency." [ [12]]

By contrast, the Court strongly rejected the New York Court of Appeals reliance on the "exclusive control" rationale of *Chadwick*. The *Belton* Court stated:

It seems to have been the theory of the Court of Appeals that the search and sei-

---

**11.** *Chadwick*, 433 U.S. at 14–15, 97 S.Ct. 2476 (footnote omitted) (emphasis added).

**12.** *Belton*, 453 U.S. at 461–62, 101 S.Ct. 2860.

zure in the present case could not have been incident to the respondent's arrest, because Trooper Nicot, by the very act of searching the respondent's jacket and seizing the contents of its pocket, had gained "exclusive control" of them. But under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his "exclusive control." [13]

The clarification of *Chadwick* in *Belton* came after our decisions in *Metcalfe* and *Hinkel*. In *Hinkel* the defendant was lawfully arrested in her car. After she was removed from her car and placed in the backseat of the patrol car, a police officer took her purse from her vehicle, opened it, and discovered a loaded handgun.[14] The *Hinkel* search was thus reasonably contemporaneous with the arrest, but it was of a container that at the time of the search was controlled by the police. We upheld the search, relying on the "immediately associated with the person" language of *Chadwick*.[15] We used this language to distinguish between containers that were in the exclusive control of the police that could be contemporaneously searched incident to an arrest and those that could not be. We cited a recent Seventh Circuit case, *United States v. Berry*,[16] and quoted language from that case indicating that while purses were items immediately associated

with the person, briefcases and luggage were not.[17]

*Belton* demonstrates that this court's reliance on the "exclusive control" rationale of *Chadwick* was, in hindsight, wrong. But the results in *Metcalfe* and *Hinkel* still appear to be correct. The search of the box that the defendant had just received by air freight in *Metcalfe*, like the search in *Chadwick*, was of an item not immediately associated with the person and was both remote in time and place from the arrest. It therefore fell within the rationale of *Chadwick* that is still valid. And the search in *Hinkel*, as a contemporaneous search of a container that was within reach of the arrestee when she was arrested, was permissible, even though the court's inquiry as to whether the container was an item immediately associated with the defendant's person turned out to be superfluous.

Subsequent to *Belton*, briefcases and luggage have been routinely considered appropriate subjects of contemporaneous searches incident to arrest,[18] notwithstanding that after *Chadwick* and before *Belton* they may have been characterized as items not immediately associated with the person of the arrestee.[19] Also subsequent to *Belton* most opinions involving container searches sought to be justified as searches incident to an arrest do not even inquire whether the container is an item immediately associated with the person of the arrestee.[20]

13. *Id.* at 461 n. 5, 101 S.Ct. 2860 (citation omitted).

14. 618 P.2d at 1069.

15. *Id.* at 1071.

16. 560 F.2d 861 (7th Cir.1977).

17. *Hinkel*, 618 P.2d at 1072.

18. *See, e.g., United States v. Tavolacci*, 895 F.2d 1423 (D.C.Cir.1990) (locked suitcase); *United States v. Mitchell*, 64 F.3d 1105 (7th Cir.1995) (briefcase); *Ricks v. State*, 322 Md. 183, 586 A.2d 740 (1991) (suitcase); *Savoie v. State*, 422 So.2d 308 (Fla.1982) (locked attache case); *United States v. Herrera*, 810 F.2d 989, 990–91 (10th Cir.1987) (briefcase).

19. *See Hinkel*, 618 P.2d 1069; *Berry*, 560 F.2d 861; *United States v. Schleis*, 582 F.2d 1166, 1170 n. 3 (8th Cir.1978) (reviewing cases holding

that luggage and briefcase searches are subject to suppression under *Chadwick*).

20. *See Tavolacci*, 895 F.2d 1423; *Mitchell*, 64 F.3d 1105; *United States v. Litman*, 739 F.2d 137, 139 (4th Cir.1984); *United States v. Fleming*, 677 F.2d 602, 607 (7th Cir.1982); *Savoie*, 422 So.2d 308; *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989); *Ricks*, 322 Md. 183, 586 A.2d 740; *see also* 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 5.5(a), 216–20 (noting *Belton's* impact on incident to arrest container searches).

But the "immediately associated with the person" language may still be useful when a search is remote in time or place from the place of arrest. In such cases the phrase may serve to distinguish between the "effects" of an arrested person which are searchable under the search incident to arrest exception at a time or place remote from the arrest under the authority of *United States v. Edwards*, 415 U.S. 800, 809, 94 S.Ct. 1234 (1974), and containers that may be

Both *Metcalfe* and *Hinkel* are interpretations of the Fourth Amendment to the United States Constitution; neither opinion of the court mentions the similar search and seizure clause of the Alaska Constitution. Thus *Metcalfe* and *Hinkel* are not interpretations of the Alaska Constitution and they do not enshrine in the state constitution the "immediately associated with the person" test. I do not understand today's opinion to take this step, since it relies on federal and state cases interpreting the federal constitution and does not state that it is establishing, or following, a rule of state constitutional law.

In my opinion, the court should recognize that the "immediately associated with the person" factor when applied to a reasonably contemporaneous search incident to arrest is an artifact of a reasonable but mistaken reading of United States Supreme Court case law. Accordingly, it should no longer be used in circumstances such as are present here. Because its use here, as in *Hinkel*, is merely superfluous, I concur with the opinion of the court. My concern is that in future cases continued use of this factor will cause

confusion as to what properly may be searched.

Specifically, retention of the factor implies that containers not immediately associated with the person of an arrestee but within his reach at the time of his arrest can not be searched. This could compromise the goals of the search incident to arrest exception, officer safety and evidence preservation. Further, since the factor under federal constitutional law provides a means that separates containers that are searchable from those that are not as to searches that are remote in time and place from an arrest, an overly broad definition of what containers are immediately associated with the person—arguably what we have here [21]—could lead to unconstitutional station-house searches.

searchable under the incident to arrest exception if the search is contemporaneous with the arrest but not if the search is remote in time or place from the arrest. The seemingly diverse results of our remote search cases of *Metcalfe*, 593 P.2d 638 (station-house search of a box that Metcalfe had received by air freight held invalid), and *Middleton v. State*, 577 P.2d 1050 (Alaska 1978), and *McCoy v. State*, 491 P.2d 127 (Alaska 1971) (station-house searches of small containers carried in clothing of arrestees held valid) may be reconciled by this factor because the box in *Metcalfe* was not an item immediately associated with the person of the arrestee, whereas the items carried in the clothing of the arrestees in *McCoy* and *Middleton* were.

Care must be taken not to construe the "immediately associated with the person" phrase too broadly, for this could lead to upholding remote

searches that violate federal constitutional standards. In this regard I note that many federal courts apply a more narrow definition of "items immediately associated with the person" than the court uses today. *See, e.g., Curd v. City Court of Judsonia, Arkansas*, 141 F.3d 839, 843 (8th Cir.1998) (concluding that a purse is an item immediately associated with the person because it is "so closely associated with the person that [it is] identified with and included within the concept of one's person."); *Berry*, 560 F.2d at 864 (concluding in dicta that a purse "might be characterized as 'immediately associated with the person of the arrestee' because it is carried with the person at all times."), *vacated on other grounds by United States v. Berry*, 571 F.2d 2, 3 (7th Cir.1978).

**21.** *See supra* note 20.