**James S. HOWARD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9447.**

Court of Appeals of Alaska.

June 26, 2009.

---

36.  *Id.* at 549 (footnote omitted).

37.  *Id.* (footnote omitted).

Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

COATS, Chief Judge.

James S. Howard was convicted of misconduct involving a controlled substance in the fourth degree,[1] driving with a suspended, revoked, or expired registration,[2] and driving without evidence of registration.[3] Howard appealed to this court, arguing that the superior court erred in denying his motion to suppress evidence. We reversed the decision of the superior court, concluding that Howard's admission that he had illegal drugs in the car was obtained in violation of his *Miranda* rights.[4]

---

1. AS 11.71.040(a)(3)(A).

2. AS 28.10.471.

3. AS 28.10.461.

4. *Howard v. State*, Alaska App. Memorandum Opinion and Judgment No. 5284 (Dec. 19, 2007), 2007 WL 4410358 (citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

We remanded the case to allow the parties to litigate what evidence, if any, should be suppressed because it was tainted by the *Miranda* violation.[5] On remand, Superior Court Judge Douglas L. Blankenship concluded that the trooper had probable cause to arrest Howard for possession of illegal drugs without relying on Howard's statement, and that the trooper lawfully obtained the methamphetamine in a search incident to Howard's arrest. Howard appeals. We uphold Judge Blankenship's decision.

### Judge Blankenship's findings

On remand, Judge Blankenship conducted an evidentiary hearing at which the arresting officer, Alaska State Trooper Andrew Ballesteros, testified. Based upon this testimony and former testimony in the case, Judge Blankenship made the following findings: On July 3, 2004, at about 6:18 p.m., Trooper Ballesteros conducted a valid traffic stop because Howard's car did not have a front license plate. The trooper approached the car on the driver's side and asked Howard for identification. As Howard searched for his driver's license, the trooper saw that Howard was moving his hands "around, [and that] they were going everywhere." Trooper Ballesteros became concerned for his own safety, so he watched Howard's hands closely.

While he was watching Howard's hands, the trooper saw a plastic container on the floorboard, close to Howard's right leg. The container was a food storage container that was clear on the sides and had a blue plastic top. Ballesteros could identify an inhaler among several items in the container. Because the container was in an odd place and because there was a possibility that the container could contain weapons, Trooper Ballesteros asked Howard what was in the container. In response, Howard raised the container up to where the trooper could clearly see most of the contents through the clear plastic sides. Although Howard quickly placed the container back on the floor, Trooper Ballesteros did see a yellow lighter, an inhaler, and two foil packages, along with other objects he could not identify. The foil packages were "roughly in the shape of triangles," approximately two and one-half inches by an inch or two.

Based upon his training, Trooper Ballesteros believed that there was a good possibility that the foil triangles contained illegal drugs. He knew that it was common for cocaine and methamphetamine to be packaged in similar foil packets. Trooper Ballesteros also considered the fact that Howard was unusually nervous and "jumpy." He knew that this behavior might be an indication that Howard was under the influence of drugs.

Trooper Ballesteros asked Howard to raise the container up again. Although Howard did raise the container, his hands "continued to move about" in a way that convinced the trooper that something was wrong. He therefore asked Howard to step out of the car. Trooper Ballesteros secured Howard in handcuffs behind his back and asked Howard what was in the foil. Howard answered that he had methamphetamine. Trooper Ballesteros advised Howard that he was under arrest for possession of methamphetamine. He asked Howard for permission to search his car; Howard replied, "Yeah."

Trooper Ballesteros and two other troopers who had arrived at the scene retrieved the plastic container from the car. It contained the foil packets, one of which had crystalline powder inside, two plastic straws, a lighter, and an inhaler. The troopers also found a small Altoid's tin in the console of Howard's car, which contained a yellow plastic bag with a small amount of white powder in it. They also found other drug paraphernalia in the car, including razor blades, pieces of plastic straws, thirteen small plastic bags, and a butane fuel canister.

The crystalline substance in the yellow bag and in the piece of foil tested positive for methamphetamine; trace amounts of methamphetamine were also found on the straw. Howard moved to suppress this evidence, but the court denied the motion. Howard was then convicted in a bench trial of fourth-degree misconduct involving a controlled sub-

5. *Id.* at 7–8, 2007 WL 4410358 at *4.

stance,[6] driving with a suspended, revoked, or expired registration,[7] and driving without evidence of registration [8] (for not having a front license plate).

Howard appealed his convictions to this court. We concluded that Howard's admission that he had methamphetamine was obtained in violation of his *Miranda* rights. We therefore directed the superior court to determine what evidence, if any, should be suppressed because of the *Miranda* violation.

On remand, Judge Blankenship found that the State had not shown that Howard's consent to search the car was untainted by the earlier violation of his *Miranda* rights. He also found that the State had not presented sufficient evidence that the troopers would have inevitably discovered the methamphetamine. But he concluded that Trooper Ballesteros had probable cause to arrest Howard for possession of illegal drugs when he saw the foil packets in the clear plastic container (before he asked Howard what was in the foil packets). Judge Blankenship therefore concluded that the search of the container was justified as a search incident to Howard's lawful arrest. He found that the clear plastic container "was located in the immediate proximity to Mr. Howard," and "was immediately associated with Mr. Howard." Thus Judge Blankenship ruled:

> Upon Mr. Howard's arrest, Trooper Ballesteros was authorized to open and inspect the contents of the closed container, unless, under the circumstances, it could not reasonably be believed that the container would yield a weapon or evidence of the crime for which the arrest was made. Here, it was reasonable for [Trooper] Ballesteros to search the container and open the foil as he had probable cause to believe that the foil contained methamphetamine.

*Why we uphold Judge Blankenship's decision*

*Trooper Ballesteros had probable cause to arrest Howard for possession of illegal drugs*

It is uncontested that Trooper Ballesteros's original stop of Howard for a traffic violation was lawful. The next question is whether Trooper Ballesteros had probable cause to arrest Howard for possession of illegal drugs. Probable cause to arrest requires a showing of a "fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred." [9] Obviously, in considering this question, we are to disregard Howard's admission which was obtained in violation of his *Miranda* rights.

Howard argues that Trooper Ballesteros was not a drug investigator and was fairly inexperienced at the time he arrested Howard. Trooper Ballesteros testified that, at the time he arrested Howard, his experience consisted of about eight months of training and four months of patrol. He testified that he had received training in "basic drug identification." He further testified that his job brought him into contact with people who used controlled substances "just about every day," and that he had observed the packaging materials used for the controlled substances. According to Trooper Ballesteros, he was aware at the time he arrested Howard that methamphetamine was often carried in plastic baggies or in folded up foil. He also stated that paraphernalia associated with these drugs included lighters, straws, or glass pipes.

Howard contends that Trooper Ballesteros "admitted that he did not know for sure what was in the foil." But in context, Trooper Ballesteros was only admitting that he did not know for sure what was in the foil packets because he could not see through the foil. At the hearing after the remand, when he was asked whether it was likely or probable that the foil could contain anything other than cocaine or methamphetamine, Trooper Ballesteros replied that he "only thought it could be one of those two."

In addition, there were other facts Trooper Ballesteros considered which tended to es-

---

**6.** AS 11.71.040(a)(3)(A).

**7.** AS 28.10.471.

**8.** AS 28.10.461.

**9.** *State v. Joubert,* 20 P.3d 1115, 1119 (Alaska 2001).

tablish probable cause to arrest Howard. For instance, Trooper Ballesteros testified, "It's normal to be nervous. [But Howard] was overly nervous. And ... he just wasn't acting right." Under the facts found by Judge Blankenship, we conclude that Trooper Ballesteros had probable cause to arrest Howard for possession of illegal drugs before he asked Howard what was inside the plastic container.

*Search incident to arrest*

Having upheld Judge Blankenship's conclusion that Trooper Ballesteros legally arrested Howard, our next question is whether Trooper Ballesteros could search the plastic container incident to that arrest. In *Crawford v. State*,[10] the Alaska Supreme Court observed that police are allowed to search the area in the immediate control of an arrestee "to ensure officer safety and to preserve evidence related to the crime."[11] But, under Alaska law, the police can search closed containers without a warrant only if exigent circumstances exist or if the item is "immediately associated with the person."[12]

In *Crawford*, the court held that when the police lawfully arrest the driver of a motor vehicle, "an unlocked center console of a motor vehicle is an item immediately associated with the person of the driver."[13] Because the center console was immediately accessible to Crawford when he was removed from his car and arrested, and because "the search of the console occurred reasonably contemporaneously with his arrest," the court held that the search was "a valid warrantless search incident to arrest."[14] Recently, in *Lyons v. State*,[15] we applied the reasoning of *Crawford* to conclude that an unlocked glove box could also be searched incident to the driver's arrest.

Applying *Crawford*, Judge Blankenship concluded that the plastic container was "immediately associated with Mr. Howard" and therefore could be searched incident to Howard's arrest. We agree with that conclusion. The container was right next to Howard's leg. It was a clear plastic container. When Trooper Ballesteros became concerned that the container might possibly contain weapons, he asked Howard what was in the container. Howard raised the container up so that the trooper could see the contents. Consequently, before he searched the container the trooper had already seen the yellow lighter, the inhaler, and the foil packets, which he concluded probably contained illegal drugs. Given the location of the plastic container and Trooper Ballesteros's observation of it, we conclude that the plastic container was "immediately associated with the person." Therefore, Trooper Ballesteros could search the plastic container incident to Howard's arrest.

Howard next argues that even if Trooper Ballesteros could search the plastic container he could not legally open the foil packets without first obtaining a search warrant. However, we have found that Trooper Ballesteros's search of the container was a lawful search incident to Howard's arrest for illegal drugs. Therefore, he was authorized to search for evidence of the crime for which Howard had been arrested.

In *Middleton v. State*,[16] the defendant was arrested for an armed robbery of a liquor store and taken to the police station. At the station, the police required her to empty her pockets.[17] When the police searched Middleton's wallet, they discovered a folded piece of paper. They unfolded the paper and found a sketch of a floor plan of the liquor store that had been robbed.[18] Middleton argued that, even if the search of her wallet was constitutional, the police had no authority to open the folded piece of paper without a warrant.[19]

10. 138 P.3d 254 (Alaska 2006).

11. *Id.* at 258.

12. *Id.* at 259.

13. *Id.* at 262.

14. *Id.*

15. 182 P.3d 649 (Alaska App. 2008).

16. 577 P.2d 1050 (Alaska 1978).

17. *Id.* at 1055.

18. *Id.* at 1051–52, 1055.

19. *Id.* at 1055.

But the Alaska Supreme Court held that the police could open the paper because it was "an integral part of the search for evidence."[20] In other words, the search was permissible as a search incident to arrest; the police could search Middleton for evidence of the crime for which she had been arrested—the armed robbery of the liquor store.

In a later case, *Dunn v. State*,[21] we summarized this law concerning the search of closed containers incident to arrest:

> [U]pon the lawful, non-pretextual arrest of an individual for a crime, evidence of which could be concealed on the person, a search of the arrestee's person, his clothing and articles which, akin to clothing, are immediately associated with the person of the arrestee may be searched at the time of the arrest, or within a reasonable period thereafter. As long as the search is confined within these limits, it is permissible for officers to open and inspect the contents of any closed containers found, unless, under the circumstances, it could not reasonably be believed that the container would yield ... evidence of the crime for which the arrest was made.[22]

Based on this authority, we uphold Judge Blankenship's decision that Trooper Ballesteros's search of the foil packets in the plastic container was a valid search incident to Howard's arrest.

*Plain view*

■ Howard argues that the State should have to justify the search under the "plain view" exception to the warrant requirement. Since we have concluded that Trooper Ballesteros's search was justified as a search incident to arrest, the State does not need to justify the search under the plain view excep-tion. However, we conclude that under the circumstances of this case, the search was also justified under the plain view exception to the warrant requirement.

In *Newhall v. State*[23] we held that "a police officer may open a package under the plain view theory only if the contents of the container were identifiable to a virtual certainty."[24] In his concurring opinion in *Newhall,* Chief Judge Bryner pointed out that a high degree of certainty as to the presence of contraband is not the sole prerequisite to a warrantless search of a closed, opaque container under the plain view doctrine.[25] Because the core concern of the warrant requirement is privacy, the "pivotal inquiry must be whether observation of the unopened container amounts to a virtual, if not literal, observation of its contents—an 'equivalent to the plain view of [the contraband] itself.'"[26] If such equivalency exists, all reasonable expectation of privacy in the contents of the container ceases:

> the plain view exception is founded on the theory that there can be no reasonable expectation of privacy when contraband is in plain view. It is for this reason that the doctrine allows the warrantless opening of a properly seized container—such as a bottle or a plastic bag—which is transparent and unmistakably reveals its contents to be contraband. No reasonable person could maintain that any vestige of privacy remains in the container.[27]

In *Newhall,* the trooper had a warrant to search a suspicious package for alcohol.[28] The trooper opened the package under authority of the warrant and discovered the alcohol, which was being brought into a village in violation of a local option law.[29] But the trooper also discovered another package which he assumed contained illegal drugs.[30]

20. *Id.*

21. 653 P.2d 1071 (Alaska App.1982).

22. *Id.* at 1082.

23. 843 P.2d 1254 (Alaska App.1992).

24. *Id.* at 1259 (footnote omitted).

25. *Id.* at 1261 (Bryner, C.J., concurring).

26. *Id.* (Bryner, C.J., concurring) (citation omitted).

27. *Id.* at 1261 (Bryner, C.J., concurring).

28. *Id.* at 1256.

29. *Id.*

30. *Id.*

The trooper opened the second package and found marijuana.[31]  Therefore in *Newhall,* unlike in this case, the trooper's authority to search arose *only* from the warrant, which allowed him to search for alcohol.[32]  The trooper was not authorized to exceed that authority even if he had abundant probable cause.[33]  The trooper could search the second package only if its contents were in plain view,[34] such that "[n]o reasonable person could maintain that any vestige of privacy remain[ed] in the container."[35]

A common drug container presents a different circumstance because its content may be inferred from the package itself.  In *Reeves v. State,*[36] the Alaska Supreme Court applied the plain view exception in a case where a correctional officer found an opaque balloon on Reeves during a pre-incarceration inventory search.[37]  The officer unwrapped the balloon and found a brownish colored powdery substance which was later identified as heroin.[38]  In determining whether the search of the contents of the balloon was justified under the plain view exception to the warrant requirement, the supreme court held that the officer could search the container if he had probable cause: "the question precisely posed in the context of this case is whether the correctional officer's seizure and search of the balloon was based on his reasonable judgment prior to the seizure that the balloon contained contraband and whether that belief was grounded upon probable cause."[39]

We applied this same standard in *Brown v. State.*[40]  Therefore, under Alaska case law, applying the plain view exception to common drug containers where an officer has probable cause to arrest, the question is whether the officer had probable cause to conclude that the container held contraband.

Since we have upheld Judge Blankenship's finding that Trooper Ballesteros had probable cause to believe that the foil packets contained either cocaine or methamphetamine, the trooper was authorized to open the foil packets without a warrant under the plain view exception to the warrant requirement.  We accordingly conclude that the superior court did not err in denying Howard's motion to suppress.

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, concurring.

I agree with my colleagues that the evidence in this case was lawfully seized and searched, but I disagree with the lead opinion's analysis of why this is so.  In particular, I disagree with Judge Coats's conclusion that the plastic storage container was an article "immediately associated with [Howard's] person".

Judge Coats reaches this conclusion because the plastic container was found at Howard's feet, and because the contents of this container were items personal to Howard (for example, his inhaler).  But this analysis of the issue is inconsistent with the analysis adopted by the Alaska Supreme Court in *Crawford v. State,* 138 P.3d 254, 258–262 (Alaska 2006).

In *Crawford,* the supreme court held that the center console of a car is a closed con-

31.  *Id.*

32.  *Id.* at 1256–57.

33.  *Id.* at 1257.

34.  *Id.*

35.  *Id.* at 1261 (Bryner, C.J., concurring).

36.  599 P.2d 727 (Alaska 1979).

37.  *Id.* at 738.

38.  *Id.* at 730.

39.  *Id.* at 739.  *See also Newhall,* 843 P.2d at 1260 & n. 4 ("It is possible that in deciding

[*Reeves'*] the supreme court was influenced by the fact that a 'balloon could be one of those rare single-purpose containers which by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.'") (quoting *Texas v. Brown,* 460 U.S. 730, 750–51, 103 S.Ct. 1535, 1548, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring)).

40.  809 P.2d 421, 423 (Alaska App.1991) (holding that the search of a balloon was justified under the plain view exception where the "contraband nature of the balloon ... was immediately apparent to the officer who seized it").

tainer that is "immediately associated with the person" of the driver. 138 P.3d at 262. Conceivably, this conclusion might support the result reached by my colleagues in this case—because the plastic storage container found at Howard's feet might be analogized to the center console of a vehicle.

But in *Crawford*, the supreme court reaffirmed its adherence to the holding of the Seventh Circuit in *United States v. Berry*, 560 F.2d 861, 864–65 (7th Cir.1977) [1]—the holding that an attaché case is *not* a closed container that is "immediately associated with the person", even though an attaché case is often employed to carry items that are personal to its owner. According to *Berry* and *Crawford*, the reason an attaché case is not "immediately associated with the person" is that it is "not ... carried on an individual's person in the sense that his clothing or items found in his pocket are." 560 F.2d at 864.

Relying on *Berry*, our supreme court in *Crawford* reasoned that an attaché case or briefcase is "unlike a purse" because these containers are "not always ... carried with the person". *Crawford*, 138 P.3d at 260 (citing *Berry*, 560 F.2d at 864). Rather, an attaché case or briefcase "is more like luggage[,] in that it is often out of a person's reach"—for instance, carried or stored in the trunk of a car. *Id.*

Applying these same criteria to the plastic storage container in Howard's case, I conclude that the plastic storage container is *not* an article that is "immediately associated with [Howard's] person". True, people often use these plastic storage containers to carry household items or other items of a personal nature (as well as to store food, which is the container's primary intended function). But

these storage containers do not fit in a person's pockets, and they are not normally carried continuously on one's person like a purse. Rather, they are like the attaché case in *Berry*. They function like small pieces of luggage. True, they are often carried in the passenger compartment of a car, but they are just as often—and just as easily—stored in the trunk of the car, or in some other place not immediately accessible to the owner.

Judge Coats's analysis of this question ultimately leads to results that are flatly inconsistent with *Crawford* and the recognized law of search and seizure. The same two factors that Judge Coats relies on—(1) the fact that the storage container was found next to Howard's body, and (2) the fact that the storage container apparently contained items that were personal to Howard—might apply to almost any attaché case, backpack, duffel, or small suitcase. But under *Crawford*, containers of this nature are *not* subject to warrantless search.

For these reasons, I can not join my colleagues in declaring the plastic storage container to be an item "immediately associated with [Howard's] person".

I conclude, nevertheless, that the search of the plastic container was lawful because this particular container was transparent, and (according to the officer's testimony) its contents were in plain view.

---

1.  Later vacated as improvidently rendered: 571 F.2d 2 (7th Cir.1978).