**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stephen Michael BERRY, Robert Hugh Wilson, and Donald Gene Richardson, Defendants-Appellants.**

**Nos. 76–2014, 76–2037, 76–2038.**

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1977.

Decided Aug. 24, 1977.

---

Michael L. Shakman, William T. Huyck, Richard S. Jalovec, Stephen M. Komie, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., John L. Sullivan, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

BAUER, Circuit Judge.

Defendants appeal their convictions for interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Among several grounds for reversal, they argue that certain evidence and the fruits thereof obtained through a warrantless search of an attache case belonging to defendant Robert Wilson should have been suppressed. Based on *United States v. Chadwick*, —— U.S. ——, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), decided subsequent to the argument in this case, we agree with the defendants that, under the facts adduced at the suppression hearing, the search seems unconstitutional. We remand for additional hearings.

The facts presented at the suppression hearing are as follows: Several FBI agents followed defendants Stephen Berry and Robert Wilson, suspected bank robbers, to an apartment building in Schiller Park, Illinois. Berry and Wilson entered the building about 3:45 p. m. and at about 5:00 p. m. left the building and walked to two parked cars in the building lot. Berry entered one car while Wilson opened the trunk of the

---

* The Hon. William J. Campbell, United States District Court for the Northern District of Illinois, is sitting by designation.

other and removed an attache case. As Wilson walked toward the car where Berry sat, the two were arrested by FBI agents. Each was spread-eagled against the car, searched and handcuffed. They were then shunted to a gangway about ten to twelve feet from the parking lot where they remained for a few minutes while other agents searched Wilson's apartment in the building for a third suspected bank robber, Donald Richardson, who was suspected of being an accomplice of Wilson and Berry.

The attache case was taken from Wilson at the time of his arrest and placed on the ground next to him. The agent in charge of the operation then moved it to a corner of the building where he watched it while he instructed the other agents over a loudspeaker. After Wilson and Berry were taken upstairs, the agent in charge opened the case. This occurred in the presence of other agents about eight minutes after the arrest. There were approximately twenty-three FBI agents and local policemen involved in the entire operation.

In *Chadwick*, federal narcotics agents arrested the defendants outside a Boston train station as the defendants were loading a large footlocker into an automobile. The defendants were searched, and both they and the unopened footlocker were taken to the federal building. There the agents opened the footlocker without a search warrant and found marijuana. The Supreme Court held the warrantless search violated the Fourth Amendment, rejecting the Government's argument that the warrantless search was constitutional because (1) the Fourth Amendment's warrant clause applies only to searches of private dwellings; (2) the automobile exception to the warrant clause applies to other moveable chattels such as luggage; and (3) the Constitution permits warrantless search of any property in the possession of a person arrested in public, so long as there is probable cause to believe that the property contains contraband or evidence of crime.

In reaching its decision, the Court clarified when a warrant is required to search property of an arrestee seized at the time of arrest:

"Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *Id.* at ——, 97 S.Ct. at 2485.

In the instant case, the FBI agent in charge of the operation testified that he had possession of the case after the arrest and before the search, and that he searched the case after the arrestees were taken upstairs to the apartment. Thus, at the time of the search the attache case was in the officer's exclusive control, and there was no longer any danger that the arrestee might gain access to it to seize a weapon or destroy evidence.

The more difficult issue presented here is whether the attache case was "immediately associated with the person of the arrestee." If it was, the later search could be justified as a search of the arrestee's person, which need not be undertaken contemporaneous with the arrest. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Footnote 10 of the *Chadwick* opinion speaks to this matter:

"Unlike searches of the person, *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest. Respondents' privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest." —— U.S. at ——, 97 S.Ct. at 2486 n. 10.

At footnote 8, the Court explained the nature of the privacy interest in the locker:

"Respondents' principal privacy interest in the footlocker was of course not in the

container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial infringement with respondents' use and possession, the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain private." *Id.* at ——, 97 S.Ct. at 2485 n. 8.

■ The Court appears to be distinguishing—for purposes of whether a warrant is required to search property in police custody that was seized from a suspect at the time of the arrest—between searches of an arrestee's clothing, as in *Edwards,* or items that were in his pockets, as in *Robinson,* from searches of other possessions, such as luggage, that were within his immediate control. Warrantless searches of the former items after they come in police custody can be characterized as searches of the arrestee's person because they do not involve any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself. Warrantless searches of the latter items, however, affect privacy interests other than those reduced by the arrest itself and thus can be conducted only so long as the danger exists that the arrestee might gain access to the property to seize a weapon or destroy evidence.

This distinction seems to be a new one that conflicts with language in *Edwards* suggesting that officers may search at any time after an arrest any item that could have been searched at the time of arrest:

"Once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence on the other." 415 U.S. at 807, 94 S.Ct. at 1239.

It was on the basis of this language that several courts of appeal had held prior to *Chadwick* that briefcases and similar items possessed by arrestees may be searched at a later time. E.g.,*United States v. Battle,* 166 U.S. App.D.C. 396, 510 F.2d 776, 777–79 (1975); *United States v. Schleis,* 543 F.2d 59, 61–62 (8th Cir. 1976). By its *Chadwick* decision, the Court now appears to have limited *Edwards* to its own facts.

Returning to the instant case, we believe that the search of the attache case is better characterized as a search of possessions within the arrestee's immediate control than as a search of his person. First, as a matter of common usage, a briefcase is not an item carried on an individual's person in the sense that his clothing or items found in his pocket are. Second, as was true of the footlocker in *Chadwick,* the privacy interest in the attache case here centered on its contents rather than on the container itself. A search of the interior constituted "a far greater intrusion into Fourth Amendment values" than either Wilson's arrest or the impoundment of the case. Finally, unlike a purse that might be characterized as "immediately associated with the person of the arrestee" because it is carried with the person at all times, the attache case here was more like luggage in that Wilson was not carrying it when he left the building, but rather removed it from an auto trunk immediately before his arrest. The warrantless search of the attache case in police custody thus cannot be justified as a search of Wilson's person. The record is silent as to whether the opening of the attache case had any connection with the matter of attempting to ascertain the then whereabouts of the third fugitive, Richardson, who was not found in the apartment building by the searching agents.

■ In summary, we hold that the warrantless search of Wilson's attache case conducted after his arrest while the case was in police custody cannot be justified as a search incident to arrest because there no longer was any danger that the arrestee might gain access to the case to seize a weapon or destroy evidence; nor can the

search be justified as a search of the person because the brief case cannot be characterized as an item immediately associated with Wilson's person.

 In the district court the Government relied solely on these two grounds to justify the warrantless search and framed its presentation at the suppression hearing accordingly. Because we believe that *Chadwick*, decided subsequent to the presentation of the Government's case, changed the law with regard to warrantless searches of items seized from an arrestee, we think it appropriate to permit the Government to present additional evidence of the circumstances surrounding the instant search so that the district court can ascertain whether the search may be justified under another exception to the warrant requirement.

Accordingly, we remand this case to the district court for further hearings on defendants' motion to suppress the evidence obtained from the attache case and the fruits thereof.

REVERSED AND REMANDED WITH DIRECTIONS.