Jonathan Neal JARNIG, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10519.

Court of Appeals of Alaska.

Sept. 27, 2013.

Douglas Moody, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and E. SMITH, Superior Court Judge.[*]

## OPINION

ALLARD, Judge.

Jonathan Neal Jarnig was arrested on suspicion of driving a stolen vehicle. After he was handcuffed and placed in a patrol car, the police searched the vehicle and discovered a zippered nylon bag under the front passenger seat. The police opened the bag and found drugs and drug paraphernalia. Based on this evidence, Jarnig was convicted

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

of third-degree misconduct involving a controlled substance. Jarnig argues that the search of the bag was illegal and that the superior court should have suppressed the evidence found in the bag.

We conclude that the superior court applied the wrong legal analysis and failed to make all the necessary factual findings when it upheld the search of the bag as a search incident to arrest. We therefore remand this case to the superior court for additional factual findings and reconsideration of this issue.

*Facts and proceedings*

On December 4, 2006, the Anchorage police stopped a black Pontiac Grand Am they believed had been stolen and they arrested the driver, Jonathan Jarnig. The police handcuffed Jarnig and placed him in a patrol car. While Jarnig was in custody in the patrol car, Officer James Trull searched the passenger compartment of the Pontiac. Trull discovered a black nylon bag wedged under the front passenger seat, underneath the lever used to move the seat forward and backward. After extracting the bag, Trull opened the bag and found drugs and drug paraphernalia, two cell phones, a change purse, and a toothbrush. Jarnig denied any knowledge of the bag. He said he borrowed the car from a man named George he met at the Avenue Bar.

Jarnig was charged with third-degree misconduct involving a controlled substance[1] and first-degree vehicle theft.[2] Before trial, he moved to suppress the evidence found in the search of the bag, arguing that the search was illegal. Superior Court Judge Patrick J. McKay denied the motion, ruling that the warrantless search was a valid search incident to arrest. At trial, Jarnig was convicted of the drug charge and acquitted of vehicle theft. On appeal, Jarnig renews his contention that the search of the bag was unlawful.

1. AS 11.71.030(a)(1).

2. AS 11.46.360(a)(1).

*Jarnig has standing to challenge the seizure of the bag*

The State argues first that Jarnig has no standing to challenge the search of the bag because he took the stand at trial and denied the bag was his.

■ In *Jones v. United States,*[3] the United States Supreme Court adopted the "automatic standing rule," holding that a defendant has standing to challenge a search and seizure when possession of the seized evidence is an essential element of the charged offense.[4] The Court's rationale for this decision was two-fold: (1) to avoid the self-incrimination dilemma a defendant charged with possession would face if forced to admit to possession in order to assert standing to challenge a search or seizure[5]; and (2) to prevent the government from arguing for purposes of conviction that the defendant possessed contraband while denying that the contraband belonged to the defendant for purposes of standing.[6] The Court declared that it was "not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government."[7]

The Alaska Supreme Court adopted the automatic standing rule in *State v. Salit.*[8] In *Salit,* the State argued that the defendant had no standing to challenge the search of his garment bag because, at the time of the search, he denied the bag was his and thus abandoned the bag.[9] Relying on *Jones,* the supreme court concluded that the State's standing argument was "untenable" in a case in which a possessory offense was charged.[10] The court reasoned that "[i]t would be a completely anomalous result to allow the government to argue that the alleged contraband belonged to [the defendant] for purposes of conviction, but that it did not belong to him for purposes of standing."[11]

A few weeks after *Salit* was decided, the United States Supreme Court repudiated its automatic standing rule in *United States v. Salvucci.*[12] As the State points out, the majority of jurisdictions that have addressed the issue since that time have followed *Salvucci* and abandoned the automatic standing rule.[13] But a minority of states have retained automatic standing as a matter of state law.[14]

The State argues that Alaska should abandon the automatic standing rule, but it recognizes that this Court has no authority to overrule a decision of the Alaska Supreme Court. The State therefore urges us to hold—consistently with *Salit,* it argues—that even if Jarnig had standing to contest the search before trial, he forfeited that standing once he took the stand at trial and disavowed ownership of the bag. The State argues that "Jarnig should not, as a matter of sound public policy, be allowed to have it both

3. 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

4. *Salvucci,* 448 U.S. at 87–88, 100 S.Ct. at 2550–51 (citing *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973)) (discussing *Jones* ).

5. *Jones,* 362 U.S. at 262, 80 S.Ct. at 731.

6. *Id.,* 362 U.S. at 263–64, 80 S.Ct. at 732.

7. *Id.*

8. 613 P.2d 245 (Alaska 1980).

9. *Id.* at 255 ("When property is abandoned, it no longer is subject to the protection of the fourth amendment.").

10. *Id.*

11. *Id.*

12. 448 U.S. at 95, 100 S.Ct. at 2554–55.

13. *State v. Davis,* 283 Conn. 280, 929 A.2d 278, 314–15 (2007) (collecting cases); David A. Macdonald Jr., *Standing to Challenge Searches and Seizures: A Small Group of States Chart Their Own Course,* 63 Temp. L. Rev. 559, 572–74 & n. 119 (1990) (noting that forty-two states had followed the United States Supreme Court's legitimate-expectation-of-privacy test and that most of these states had expressly eliminated automatic standing).

14. *State v. Owen,* 453 So.2d 1202, 1205 (La. 1984); *Commonwealth v. Amendola,* 406 Mass. 592, 550 N.E.2d 121, 125–26 (1990); *State v. Settle,* 122 N.H. 214, 447 A.2d 1284, 1286–87 (1982); *State v. Alston,* 88 N.J. 211, 440 A.2d 1311, 1319–20 (1981); *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 468–69 (1983); *State v. Wood,* 148 Vt. 479, 536 A.2d 902, 908 (1987).

ways." The position the State urges is not consistent with *Salit,* because it would allow *the government* to have it both ways—to "subject[ ] the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation" [15]—a practice *Salit* expressly condemned.

█ The State asks us in the alternative to certify Jarnig's case to the Alaska Supreme Court, so that the supreme court can rule on whether *Salit* is still good law. Under AS 22.05.015(b), this Court has the authority to certify a case to the Alaska Supreme Court if the case involves a significant question of law under the constitutions of the United States or Alaska, or if it involves an issue of substantial public interest that should be determined by the supreme court. The supreme court may then accept or decline the proposed transfer of the case.

█ We decline to certify Jarnig's case to the supreme court. The State has advanced no persuasive reason to believe the Alaska Supreme Court is now prepared, more than thirty years after *Salvucci* was decided, to repudiate the automatic standing rule in *Salit.*

Furthermore, even assuming that the supreme court might be willing to reconsider *Salit,* we are not convinced that there is a compelling reason to ask the court to decide the issue outside the normal course of litigation. We note that in *Salit* the supreme court declared that the "real" underlying issue was not whether the defendant had standing to contest the search, but rather whether the defendant, by abandoning the bag, lost any reasonable expectation of privacy in it.[16] Likewise in this case, it appears that the real issue is not whether Jarnig has standing to contest the search, but rather

whether he retained a reasonable expectation of privacy in the bag once he denied ownership of the bag and the car in which it was found. The State had the opportunity to litigate this issue in the superior court, but did not do so.

*Jarnig preserved his claim for appeal*

█ The State also argues that Jarnig waived his claim that the search was not a valid search incident to arrest because he inadequately briefed that argument in the superior court. We agree that Jarnig's briefing on this question was skeletal; in his motion to suppress, Jarnig asserted only that the police had searched the bag without a warrant. But this fact was sufficient to shift the burden of proof to the State. "Once a search or a seizure has been executed without a warrant, the burden falls upon the state to prove by a preponderance of the evidence that one of the exceptions to the warrant requirement applies and will sustain the search as reasonable." [17] The State argued that the search was valid as a search incident to arrest, citing the pertinent case law. The superior court then ruled on the merits of that claim. We conclude that, under these circumstances, Jarnig adequately preserved this issue for appeal.[18]

*Why we conclude that a remand is necessary in this case*

Jarnig argues that the superior court erred when it found that the search of the bag was a valid search for evidence incident to arrest.

█ A search without a warrant is per se unreasonable unless the search falls within "one of the 'few specifically established and well-delineated exceptions' to the warrant requirement." [19] Under the "search incident to

---

**15.** *Salit,* 613 P.2d at 255 (quoting *Jones,* 362 U.S. at 263–64, 80 S.Ct. at 732).

**16.** *Salit,* 613 P.2d at 255, 258.

**17.** *State v. Myers,* 601 P.2d 239, 246 (Alaska 1979); *see also Schraff v. State,* 544 P.2d 834, 840 (Alaska 1975); *Chandler v. State,* 830 P.2d 789, 792 (Alaska App.1992) (same).

**18.** *Compare Cheely v. State,* 850 P.2d 653, 656 (Alaska App.1993) (holding that the defendant

could not raise new arguments that had never been advanced, or ruled on, in the superior court).

**19.** *Zehrung v. State,* 569 P.2d 189, 192 (Alaska 1977) (quoting *Schraff,* 544 P.2d at 838 (quoting *McCoy v. State,* 491 P.2d 127, 132 (Alaska 1971))).

arrest" exception, the police may conduct a warrantless search of the area " 'within [the arrestee's] immediate control' at the time of the arrest to ensure officer safety and to preserve evidence related to the crime." [20]

■ Under Alaska law, special rules govern a search incident to arrest when the search is of a closed container.[21] Normally, unless there are exigent circumstances—*i.e.,* some risk that evidence will be destroyed or officers harmed—the police must seize the container and apply for a warrant.[22] But if the item is "immediately associated with the person," no exigent circumstances are required, unless the container is too small to contain a weapon and the arrest is for a crime for which no evidence could exist in the container.[23]

In *Crawford v. State,* the Alaska Supreme Court held that the center console of a motor vehicle is a container "immediately associated" with the person and may be searched incident to arrest.[24] The court reasoned that a center console often serves the same function as a pocket—like a pocket, it "is commonly used to hold money, a cellular telephone, and personal hygiene items." [25] The court explained that a suspect who has been lawfully arrested has a diminished expectation of privacy, such that searching a wallet, purse, pocket, or other container "immediately associated" with the person is reasonable incident to that arrest.[26] The court concluded that this holding would not greatly expand the search incident to arrest exception, because even when a container is "immediately associated" with an arrestee, the police must

still obtain a warrant if the container was not within the suspect's immediate control at the time of the arrest.[27]

■ When Jarnig's suppression motion was litigated in the superior court, the State mischaracterized this law in its briefing. The State argued that when the police arrest the driver of a vehicle, they have the authority to search *any* container that was within the driver's reach at the time of the stop. At the evidentiary hearing, the State therefore focused only on proving that the bag was within Jarnig's reach at the time of the stop. The State did not assert that the bag was "immediately associated" with Jarnig's person because it was the type of bag normally used to carry personal items. Yet in *Crawford,* the supreme court made clear that, in the absence of exigent circumstances, a warrantless search of a closed container will only be upheld as a search incident to arrest if the container is *both* "immediately associated" with the person *and* within the person's immediate control at the time of arrest.[28]

■ The superior court's order denying Jarnig's motion to suppress appears to have adopted the State's incomplete legal analysis. Although the court acknowledged the requirement that a container be "immediately associated with the [arrestee's] person," the court did not actually find that this requirement had been met in Jarnig's case. That is, the court's order did not assess whether the bag was used, in general or under the facts of this case, like a purse or a pocket, to carry items that are normally kept on the person.[29]

**20.** *Crawford v. State,* 138 P.3d 254, 258 (Alaska 2006) (quoting *McCoy,* 491 P.2d at 133 (quoting *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969))).

**21.** *Crawford,* 138 P.3d at 258–59.

**22.** *Id.* at 259.

**23.** *Id.; Hinkel v. Anchorage,* 618 P.2d 1069, 1070–71 (Alaska 1980).

**24.** 138 P.3d at 259–60.

**25.** *Id.* at 260.

**26.** *Id.*

**27.** *Id.* at 261.

**28.** *Id.*

**29.** In determining how a container is used, the courts generally do not consider the items the police ultimately found in the container, unless those items were in plain view. Prior cases have looked only at how the container is generally used, *see Crawford,* 138 P.3d at 260; *Hinkel,* 618 P.2d at 1071; *Lyons v. State,* 182 P.3d 649, 651 (Alaska App.2008); *Wilburn v. State,* 816 P.2d 907, 912 (Alaska App.1991), unless the use under the particular facts of the case is obvious, *see Howard v. State,* 209 P.3d 1044, 1048 (Alaska App.2009); *id.* at 1051 (Mannheimer, J., concurring).

Instead, the court relied on *New York v. Belton*[30] to uphold the search. At the time the superior court's order was issued, *Belton* was widely understood to allow the police to conduct a warrantless search under the federal constitution of *any* container in the passenger compartment of a vehicle incident to the driver's arrest, even if the driver was in police custody at the time of the search.[31] Later, in *Arizona v. Gant*, the United State Supreme Court rejected this broad interpretation of *Belton*, holding that *"Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." [32] The superior court's reliance on *Belton* further supports our conclusion that the court upheld the search based solely on its finding that the bag was within Jarnig's immediate control, and that the court never determined whether the bag was "immediately associated" with Jarnig's person.

We also note that although the superior court did expressly find that the contraband was within Jarnig's "immediate control," the only fact the judge relied on for this finding was that the bag was located "under the [seat] adjacent [to] where the defendant was sitting." To find that the bag was within Jarnig's "immediate control," the superior court had to find that there was a reasonable possibility that Jarnig could have accessed the bag to obtain a weapon or destructible evidence.[33] It is not clear from the record that this determination was made. We note that there was conflicting testimony on this point. Officer Trull initially testified that, in his opinion, the bag was within Jarnig's reach when Jarnig was sitting in the driver's seat. But Officer Trull also testified that the bag was "wedged under the seat," and that, in

order to extract the bag, he went to the back seat, moved a tire out of the way, and pulled the bag out from behind the seat.

■ We cannot conclude from this record that, in upholding the search, the superior court applied the correct legal analysis, or made all the factual findings necessary to that analysis. We therefore remand this case to the superior court for additional findings and reconsideration of whether the search was a valid search for evidence incident to arrest.

*Why we do not resolve whether the search was a valid search for weapons at this time*

We note that the superior court separately found that the search of the bag was a valid search for weapons. We do not, at this juncture, address the validity of that ruling. Jarnig argues that, to the extent the search was a search for weapons, the search was illegal under *Arizona v. Gant* because, at the time of the search, he was handcuffed and sitting in a patrol car and had no access to the passenger compartment of the vehicle.

■ As we noted earlier, *Gant* was decided after the superior court issued its order in this case. In *Gant*, the United States Supreme Court held that the police may search a vehicle incident to a recent occupant's arrest in two circumstances: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " [34] Thus, under federal constitutional law, the police may search a vehicle for weapons only when the arrestee is unsecured and within reach of the interior of the vehicle.

**30.** 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), *reinterpreted in Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

**31.** *Gant*, 556 U.S. at 341, 129 S.Ct. at 1718.

**32.** *Id.*, 556 U.S. at 335, 129 S.Ct. at 1714.

**33.** *See id.*, 556 U.S. at 339, 129 S.Ct. at 1716 (construing the area within the arrestee's "immediate control" as the area from within which the arrestee might gain possession of a weapon or destructible evidence); *Crawford*, 138 P.3d at 261

(noting that the "immediately associated" with the person distinction is irrelevant unless the item was accessible to the suspect at the time of the arrest); *State v. Ricks*, 816 P.2d 125, 128–29 (Alaska 1991) (Moore, J., concurring) (noting that the arrestee's jacket was not within his immediate control because there was no reasonable possibility that he could access it to obtain a weapon or destroy evidence).

**34.** 556 U.S. at 343, 129 S.Ct. at 1719.

There is no dispute that Jarnig was secured in a patrol car, out of reach of the passenger compartment of the vehicle, at the time of the search. Because of this, the State appears to concede that the search for weapons was illegal under *Gant.* But the State argues that Jarnig is not entitled to exclusion of the evidence under *Gant* because the search in this case took place before *Gant* was decided.

Jarnig's appeal was still pending when *Gant* was issued on April 21, 2009, although the search of the bag took place years earlier, in December 2006. The United States Supreme Court has held that *Gant* applies retroactively to all decisions that were pending on direct appeal when *Gant* was decided.[35] However, in *Davis v. United States,*[36] the Supreme Court held that a defendant is not entitled to exclusion of the evidence if the police conducted the search in objectively reasonable reliance on pre-*Gant* law.[37] The Court found that exclusion of the seized evidence was not required in *Davis,* because the police reasonably relied on then-binding precedent in the Eleventh Circuit, which had construed *Belton* to authorize the search of the entire passenger compartment of a vehicle incident to a recent occupant's arrest.[38]

Here, the parties have not had an opportunity to meaningfully brief whether, at the time of the search in this case, Alaska law provided the police with the type of bright-line rule the Supreme Court identified in *Davis.* Nor have the parties briefed whether this court should adopt a good-faith exception to the exclusionary rule in this context. Therefore, if the superior court concludes that the search of the bag was not a valid search for evidence under *Crawford,* the parties may litigate this issue in the superior court.

*Conclusion*

We REMAND Jarnig's case to the superior court for additional findings and for reconsideration of whether the search of the bag was a valid search for evidence incident to arrest. If the superior court concludes that the search was not a valid search for evidence, the parties may litigate whether Jarnig is entitled to exclusion of the evidence under *Gant.*

The superior court shall transmit its findings and decision to this Court within 90 days. The parties shall then have 45 days to submit simultaneous supplemental memoranda addressing the superior court's new findings and decision. We retain jurisdiction.

**35.** *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 2431, 180 L.Ed.2d 285 (2011).

