NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| FREDERICK A. PITKA, | Court of Appeals No. A-11122 |
| Appellant, | Trial Court No. 4FA-11-232 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2502 — June 17, 2016 |

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Douglas O. Moody, Deputy Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER, writing for the Court and writing a separate concurrence in which Judge ALLARD joins.

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Frederick A. Pitka was arrested for driving under the influence. Following Pitka's arrest, officers at the scene searched the ashtray of his car (without a warrant) and discovered a bindle of cocaine. Based on the discovery of this cocaine, Pitka was indicted for, and later convicted of, fourth-degree controlled substance misconduct. (He was also convicted of driving under the influence.)

In this appeal, Pitka claims that the search of the car ashtray was unlawful, that the bindle of cocaine found in the ashtray should have been suppressed, and that his drug conviction should therefore be reversed. For the reasons explained in this opinion, we agree with Pitka that the search of his car ashtray was unlawful, and we therefore reverse his drug conviction.

*Underlying facts*

In January 2011, a Fairbanks police officer observed a car stopped in the middle of a street, parked at an angle so that it blocked both lanes of traffic. The passenger door of the car was open, and there was a man standing in the street who was leaning into the car through the open passenger door.

The police officer believed that he was observing a drug transaction, so he activated his overhead lights. When the officer activated his lights, the pedestrian quickly put his hands into his coat pockets and fled (jumping over three fences to make his escape). The car also drove away from the scene, but other officers soon stopped the car.

The driver of the car was Frederick Pitka. During the police contact with Pitka, officers smelled a strong odor of alcohol on Pitka's breath, and they observed that his eyes were bloodshot and watery, and that he was unstable on his feet. Pitka performed poorly on various field sobriety tests, and Pitka admitted that it probably was

not safe for him to be driving. After a portable breath test showed that Pitka had a blood alcohol level of .163 percent, Pitka was arrested for driving under the influence.

Pitka's passenger told the police that she and Pitka had purchased and smoked marijuana earlier that evening. In addition, Pitka was behaving erratically: he exhibited mood swings ranging from calm co-operation to agitation. This led the police to believe that Pitka was not only under the influence of alcohol, but also under the influence of some other substance.

The police had a drug-sniffing dog, and they directed the dog to walk around Pitka's car. The dog alerted to the presence of drugs. After the dog alerted, the police searched the interior of Pitka's car. During this search, the police opened the car's ashtray and found a bindle of cocaine. Pitka admitted the cocaine was his.

Pitka was charged with fourth-degree controlled substance misconduct and driving under the influence of alcohol and/or controlled substances. [1]

After Pitka was charged with these crimes, he filed a motion to suppress the cocaine found in his vehicle's ashtray (as well as the statements he made about this cocaine to the officers at the scene). The superior court upheld the search of the ashtray under the theory that the police had probable cause to arrest Pitka for driving under the influence of controlled substances, and that the search of the ashtray was a valid search incident to Pitka's arrest.

After the superior court denied his suppression motion, Pitka consented to a bench trial, and the court found him guilty. Pitka now appeals.

---

[1]  AS 11.71.040(a)(3)(A) and AS 28.35.030(a), respectively.

*Why we conclude that the search of the ashtray was illegal under Alaska law*

As we just explained, the superior court upheld the search of the ashtray under the theory that it was a valid search incident to arrest. Pitka challenges the superior court's ruling on two bases.

Pitka's first challenge to the superior court's ruling is based on the Fourth Amendment to the United States Constitution. Pitka argues that the police lacked probable cause to arrest him for any drug-related crime, and that therefore the police had no authority to conduct *any* search of his car. See *Arizona v. Gant*, where the United States Supreme Court held that, under the Fourth Amendment, the search of the interior of a vehicle incident to the driver's arrest is lawful only (1) to prevent an unsecured arrestee from gaining access to a weapon or to destructible evidence, or (2) when the police have reason to believe that the vehicle might contain evidence relevant to the crime for which the driver is being arrested. [2]

We reject this argument because we conclude that, under the circumstances, the police *did* have probable cause to arrest Pitka for a drug offense.

When the police first observed Pitka's car, it was illegally parked across two lanes of traffic. A man was standing in the street next to the car, and he was apparently conducting a drug transaction with the occupants of the vehicle. When the officer activated his patrol car's overhead lights, this man fled, and the car drove away.

A few minutes later, when other officers stopped Pitka's car, Pitka was behaving erratically — exhibiting mood swings which, according to the testimony, suggested that Pitka was under the influence of some substance besides alcohol. In

---

[2] 556 U.S. 332, 335, 343; 129 S.Ct. 1710, 1714, 1719; 173 L.Ed.2d 485 (2009). *See also Davis v. United States*, 564 U.S. 229, 234-35; 131 S.Ct. 2419, 2425; 180 L.Ed.2d 285 (2011) (summarizing the holding in *Gant*).

addition, Pitka's passenger told the police that she and Pitka had purchased and smoked marijuana earlier that evening. Finally, a drug-detecting police dog alerted to the presence of drugs in Pitka's car.

These facts, viewed objectively, gave the police probable cause to believe that Pitka was driving under the influence of both alcohol and a controlled substance — as well as reason to believe that drugs might be found in Pitka's vehicle. We therefore conclude that the police did not violate the Fourth Amendment when they searched the interior of the car (including the ashtray) for evidence of a drug offense.

Pitka's second challenge to the superior court's ruling is based on the search and seizure provision of the Alaska Constitution (Article I, Section 14).

The Alaska Supreme Court has interpreted our state constitution to impose greater restrictions on police searches of vehicles incident to arrest. Under Alaska law, when the police arrest the driver of a vehicle and no exigent circumstances exist — *i.e.*, when there is no immediate threat to officer safety, and no immediate risk that evidence will be destroyed or removed from the vehicle — the police may not search closed containers within the vehicle unless (1) the container was within the arrestee's immediate control at the time of the arrest, *and* (2) the container is large enough to contain evidence of the crime for which the person is being arrested, *and* (3) the container is of a type "immediately associated with the person" of the arrestee.[3] Unless all three of these conditions are met, the police must obtain a warrant to search the closed container.

In Pitka's case, the superior court found that the first two conditions were met, and the testimony presented to the superior court supports these findings. The ashtray was within Pitka's immediate control at the time of his arrest: it was located next

---

[3] *See Crawford v. State*, 138 P.3d 254, 258-261 (Alaska 2006). *See also Hinkel v. Anchorage*, 618 P.2d 1069, 1070-71 (Alaska 1980); *Jarnig v. State*, 309 P.3d 1270, 1275 (Alaska App. 2013).

to the steering wheel, and it was readily accessible from the driver's seat. And the ashtray was large enough to contain drugs or other evidence of drug possession.

But the superior court failed to consider the third requirement imposed by Alaska law: whether the car ashtray was the type of container "immediately associated with [Pitka's] person".

This third requirement was first applied by the Alaska Supreme Court in *Hinkel v. Anchorage*.[4] In *Hinkel*, the supreme court held that, incident to an arrest, the police could search an arrestee's purse because purses are often carried on the person, and because purses serve the same function as pockets.[5] The court reasoned that the search of this type of container did not involve "any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself."[6]

More recently, in *Crawford v. State*,[7] the supreme court held that the center console of a vehicle is a container that is "immediately associated with the person" of the driver because the center console normally serves the same purpose as a pocket: it is "commonly used to hold money, a cellular telephone, and personal hygiene items."[8]

In Pitka's case, the State contends that the reasoning of *Crawford* applies equally to an ashtray that is built into a vehicle, because such ashtrays are capable of holding small personal items.

---

[4]  618 P.2d 1069 (Alaska 1980).

[5]  *Hinkel*, 618 P.2d at 1070-71.

[6]  *Id*. at 1072, quoting *United States v. Berry*, 560 F.2d 861, 864 (7th Cir. 1977).

[7]  138 P.3d 254 (Alaska 2006).

[8]  *Id*. at 260.

But as we recently explained in our unpublished opinion in *Jarnig v. State*,[9] the fact that a container inside a vehicle is *capable* of holding personal items does not answer the question of whether that container is "immediately associated with the person" of the driver. The police are not allowed to simply assume that the container is "immediately associated with the person" of the arrestee on the basis that it *could* hold small personal items. Rather, before the police search the container without a warrant, the police must have some articulable basis for believing that the container is *generally* used, or is actually being used *in that particular instance*, to store items that would normally be kept in a pocket or a purse.[10]

Any other rule would subject virtually every container in a vehicle to warrantless searches incident to the driver's arrest, without the State having to prove that there were exigent circumstances to justify these warrantless searches. We do not think our supreme court intended this result when the court decided *Crawford*.

In Pitka's case, the container at issue is a built-in ashtray. The intended function of an ashtray is to serve as the repository for cigarette ashes and butts. The State presented no evidence that vehicle ashtrays are generally used as containers for small personal items. Nor did the police have any case-specific indication (until they performed the warrantless search) that Pitka was using his vehicle ashtray for this alternative purpose.

The State argues that it was Pitka's burden to show that ashtrays in vehicles are *not* commonly used to store personal items — and that Pitka failed to carry that

---

[9]   2015 WL 1137656 (Alaska App. 2015).

[10]   *Jarnig*, 2015 WL 1137656 at *2-3.

burden in the superior court. But the State's argument contravenes the well-settled principle that *the State* bears the burden of justifying a warrantless search or seizure. [11]

Because the record fails to support a finding that Pitka's vehicle ashtray was a container that was "immediately associated with [his] person", we conclude that the superior court should have granted Pitka's motion to suppress the bindle of cocaine found during the warrantless search of the ashtray (as well as Pitka's associated statements to the police).

*Conclusion*

Pitka's conviction for fourth-degree controlled substance misconduct (possession of cocaine) is REVERSED. (Pitka does not challenge the validity of his conviction for driving under the influence.)

---

[11] *Chilton v. State*, 611 P.2d 53, 55 (Alaska 1980); *Jarnig v State*, 309 P.3d 1270, 1274 (Alaska App. 2013).

Judge MANNHEIMER, with whom Judge ALLARD joins, concurring.

For the reasons I am about to explain, I believe that our supreme court should re-examine its decision in *Crawford v. State* — and the entire question of what containers are "immediately associated with the person" of an arrestee.

In 1980, in *Hinkel v. Anchorage*,[1] our supreme court announced the rule that a search incident to arrest could include the search of a closed container that was "immediately associated with the person" of the arrestee. But during the ensuing thirty-five years, both the supreme court and this Court have substantially expanded the definition of which containers qualify as "immediately associated with the person" of an arrestee.

As originally conceived, the classification of "immediately associated with [the arrestee's] person" applied only to containers that were "akin to clothing."[2] In this early formulation of the test, the phrase "immediately associated" was used in the sense of "[with] nothing coming between; [with] no intermediary"[3] — the same concept that underlies such legal phrases as "immediate presence" and "immediate control".

In other words, just as arrestees could not validly object to a police search of the clothing they were wearing at the time they were taken into custody, warrantless searches of items "immediately associated" with the arrestee's person were justified by the notion that a search of these items "[did] not involve any greater reduction in the arrestee's expectations of privacy than [the reduction] caused by the arrest itself."[4]

---

[1]   618 P.2d 1069 (Alaska 1980).

[2]   *Dunn v. State*, 653 P.2d 1071, 1082 (Alaska App. 1982).

[3]   *Webster's New World College Dictionary* at 713 (4th ed. 2004).

[4]   *Crawford*, 138 P.3d 256, 261 (Alaska 2006), quoting *Hinkel*, 618 P.2d at 1072, and *United States v. Berry*, 560 F.2d 861, 864 (7th Cir. 1977).

But even though a certain type of container might typically be carried by a person, and even though that type of container might typically be used for carrying personal items, these two factors alone did not necessarily mean that the container could be categorized as "immediately associated" with the arrestee's person. Something else was required: an immediacy and constancy of possession, akin to a person's relationship to the clothing they were wearing.

This limitation on the scope of "immediately associated" containers is exemplified by the cases dealing with valises and attaché cases. In particular, in *United States v. Berry* [5] (a case that our supreme court cited approvingly in *Hinkel* and later in *Crawford*), the Seventh Circuit held that an attaché case or briefcase is *not* the kind of closed container that is "immediately associated with the person" of an arrestee — even though attaché cases are designed to be carried in one's hand, and even though they are commonly employed to hold items that are personal to the owner. [6]

As the Seventh Circuit explained in *Berry*, an attaché case does not fall within the category of containers "immediately associated with the person" because an attaché case is "not ... carried on an individual's person in the sense that his clothing or [the] items found in his pocket are". [7] The Seventh Circuit concluded that the search of an attaché case was better characterized as "a search of possessions *within the arrestee's immediate control*" as opposed to "a search of [the arrestee's] *person*." [8] Thus, the search of the closed attaché case required a warrant.

---

[5] 560 F.2d 861, 864 (7th Cir. 1977).

[6] *Berry*, 560 F.2d at 864-65.

[7] *Id*. at 864.

[8] *Ibid*. (emphasis added).

As part of its explanation of why an attaché case should not be deemed "immediately associated with the person" of an arrestee, the *Berry* court remarked that an attaché case was different from a purse because "a purse ... is carried with the person at all times".[9] In other words, the Seventh Circuit viewed purses as equivalent to pockets because pockets are, in essence, interior containers that are carried with the person at all times.

The Alaska Supreme Court employed this same analysis in *Hinkel v. Anchorage*. The issue in *Hinkel* was whether a woman's purse should be classified as a container "immediately associated with [an arrestee's] person". The court viewed this issue as hinging on whether a purse should be viewed as analogous to a pocket or, instead, analogous to a valise or attaché case. Ultimately, the supreme court concluded that a purse was more like a pocket than a valise or attaché case — and that, therefore, a purse should be considered a container "immediately associated with the person" of the arrestee.[10]

In reaching this result, the *Hinkel* majority approvingly cited (and quoted at length from) the Seventh Circuit's decision in *Berry*. Most importantly, the *Hinkel* majority approved of the distinction drawn in *Berry* between (1) containers that are merely "within the arrestee's immediate control" at the time of arrest (*i.e.*, containers that can not be opened without a warrant) and (2) containers that are so "immediately associated with the arrestee's person" that a search of these containers constitutes no more than "a search of [the arrestee's] person" incident to arrest.[11]

---

[9]  *Id.* at 864, quoted in *Hinkel*, 618 P.2d at 1072.

[10]  *Hinkel*, 618 P.2d at 1071-72.

[11]  *Id.* at 1072.

But when the *Hinkel* court described this analysis, the court used inexact phrasing that would become a predominant theme of later cases. Specifically, the *Hinkel* court declared that purses could be searched without a warrant because purses "generally serve the same function as clothing pockets."[12]

This phrasing was unfortunate because it was incomplete. The phrase "generally serve[s] the same function as clothing pockets" emphasizes the requirement that the container in question be used for holding personal items. But, standing alone, this emphasis on the container's function suggests that attaché cases *could* be searched without a warrant — the conclusion that the *Berry* court rejected.

By phrasing the test as a question of "function", the *Hinkel* court failed to expressly include the crucial additional requirement that the *Berry* court emphasized when it declared that attaché cases could *not* be searched without a warrant: the requirement that the container *also* be "akin to clothing" — in the sense that the container must, in normal usage, be more or less in continuous physical contact with the arrestee.

There are many types of containers — for example, attaché cases — that are used for carrying personal effects, but not all of these containers should be classified as "immediately associated with the person". As the *Berry* court emphasized, the requirement of constant and immediate physical possession is the factor that makes a particular type of container "akin to clothing".

In the later case of *Wilburn v. State*,[13] this Court neglected this requirement of constant and immediate possession — and, in my view, reached the wrong conclusion as to whether a container could be searched without a warrant.

---

[12] *Ibid*.

[13] 816 P.2d 907 (Alaska App. 1991).

2502

*Wilburn* involved two items — a cold-weather glove and a film canister — that were found within the arrestee's car, and were within the arrestee's reach at the time of his arrest. The *Wilburn* court noted that a glove is an article of personal clothing — and the court apparently concluded that this fact, standing alone, was a sufficient justification for finding that the glove was "immediately associated" with the person of the arrestee. [14] But the *Wilburn* court failed to consider the question of whether a glove is the type of container normally employed for carrying personal effects — which it clearly is not.

And with respect to the film canister, all the *Wilburn* court said was that the canister was "in Wilburn's vicinity when the police initiated the investigative stop", and that there was testimony that film canisters "are frequently used to hold drugs". [15]

*Wilburn* was the first Alaska appellate decision to abandon the requirement that a container be "akin to clothing". By doing so, the *Wilburn* decision departed from *Hinkel*'s and *Berry*'s central rationale for allowing a warrantless search — the rationale that the warrantless search of the container "[did] not involve any greater reduction in the arrestee's expectations of privacy than [the reduction] caused by the arrest itself". [16]

This shift in the law became more apparent when our supreme court issued its decision in *Crawford v. State*.

The question in *Crawford* was whether, following the arrest of a person for reckless driving, the police could open and search the center console of the arrestee's vehicle without a warrant. The supreme court, ostensibly relying on its prior decision in *Hinkel* and on the Seventh Circuit's decision in *Berry*, held that the warrantless search

---

[14]   *Wilburn*, 816 P.2d at 912.

[15]   *Ibid*.

[16]   *Hinkel*, 618 P.2d at 1072; *Berry*, 560 F.2d at 864.

of the center console was proper. The court explained that, in its view, the required conditions had been met: the center console was within the immediate access of the driver at the time of the stop, and the center console constituted a container that was "immediately associated" with the arrestee's person — because (1) a center console is commonly used to hold personal items, and (2) "the center console is permanently located directly next to the driver".[17]

It is true that the center consoles of motor vehicles often serve the same *function* as the pockets of a driver's clothing. As the *Crawford* court observed, center consoles are commonly employed to hold personal items such as "money, a cellular telephone, and personal hygiene items".[18] But this fact — that center consoles are often employed to *store the same things* as pockets — does not answer the question of whether center consoles should be treated more like attaché cases or, instead, like purses.

To answer this question, the *Hinkel* and *Berry* courts focused on whether the container in question was the kind of container that was so constantly and immediately in the physical possession of the arrestee that the container should be deemed "akin to clothing" — so that the warrantless opening and search of this container "[did] not involve any greater reduction in the arrestee's expectations of privacy than [the reduction] caused by the arrest itself".[19]

In *Berry*, even though the Seventh Circuit conceded that attaché cases are commonly employed to hold items that are personal to the owner, the Seventh Circuit held that an attaché case did not fall within the category of containers "immediately associated with the person" because an attaché case is "not ... carried on an individual's

---

[17]  *Crawford*, 138 P.3d at 259, 262.

[18]  *Id.* at 260.

[19]  *Hinkel*, 618 P.2d at 1072; *Berry*, 560 F.2d at 864.

person in the sense that his clothing or [the] items found in his pocket are". [20]  And in *Hinkel*, the supreme court agreed with the Seventh Circuit that the doctrine of "immediately associated with the person of the arrestee" embodied this concept of ready portability and more or less constant possession.

But in *Crawford*, the supreme court concluded that the center console of a motor vehicle was "immediately associated with the person" precisely because a center console is *not* portable — because, "[u]nlike a briefcase, which can be placed in the trunk or otherwise made inaccessible to the driver, the center console is permanently located directly next to the driver." [21]

On this point, I believe that *Crawford* is in conflict with *Hinkel* and *Berry*. The fact that center consoles can not be removed from the passenger compartment appears to *defeat* any conclusion that a center console is "immediately associated with [an arrestee's] person", as that concept was explained in *Berry* and *Hinkel*.

When the *Berry* and *Hinkel* courts speak of containers that are "akin to clothing" — containers that are the equivalent of pockets — they are referring to containers that are constantly in a person's possession, regardless of where the person might move — so that the search of these containers adds essentially nothing to the level of intrusion represented by the seizure and search of the arrestee's person.  A center console fails to meet this test.   The console is not "permanently" located next to the arrestee; it is only located next to the arrestee when the arrestee is seated in the driver's seat (or the passenger seat) of the car.

In fact, under the *Hinkel* and *Berry* analysis, the immobility of a vehicle's center console affirmatively *disqualifies* it from the category of "immediately associated"

---

[20]   *Berry*, 560 F.2d at 864.

[21]   *Crawford*, 138 P.3d at 260.

containers — because the search of the center console is a material expansion of the search of the driver's *person*.

This departure from *Berry* and *Hinkel* becomes clearer when one considers that *Crawford*'s "immobility" rationale would seemingly justify the police in searching a night stand and nearby dresser if a person is arrested while sitting or lying on a bed in a small hotel room, or would seemingly justify the police in searching the drawers of a desk if a person is arrested while sitting at the desk — because people commonly put personal items in dresser drawers and desk drawers.

Following *Crawford*, this Court in *Lyons v. State* held that an unlocked glove box could be searched incident to the driver's arrest. [22] And in *Howard v. State*, this Court held that a plastic food storage container found on the floor of the defendant's vehicle was "immediately associated" with the defendant's person — a conclusion that I disputed in my concurrence. [23]

In short, Alaska jurisprudence has substantially departed from the limited exception to the warrant requirement that was envisioned when the *Hinkel* court adopted the "immediately associated with the person" rule for warrantless searches of containers.

Moreover, the current law has proved confusing and difficult to apply in practice — as Pitka's case illustrates. Here, the police understandably (though erroneously) assumed that the ashtray of a vehicle could be searched as a matter of course incident to the arrest of the driver.

The police need to be able to meaningfully assess whether a container in a vehicle may be lawfully searched incident to the driver's arrest. The *Hinkel* court actually recognized this potential problem: the court questioned whether the line it had

---

[22]   182 P.3d 649, 650-51 (Alaska App. 2008).

[23]   209 P.3d 1044, 1048-49 (Alaska App. 2009).

drawn — the line between containers that are "immediately associated with the person" and other types of containers — was "sufficiently perceptible to be observed in practice". [24]

At the time, the *Hinkel* court declared that "experience will give us the answer." [25] I now fear that the answer is not a good one. In Justice Matthews's concurrence in *Crawford*, he echoed the *Hinkel* court's earlier concern — warning that an ill-defined "immediately associated with the person" test could "cause confusion as to what properly may be searched". [26] Justice Matthews also cautioned that if Alaska's courts adopted an overly broad definition of which containers are "immediately associated with [an arrestee's] person", this might lead to searches that are unconstitutional under federal law. [27]

I think the present case provides an opportunity for our supreme court to re-evaluate this area of Alaska law — both in terms of its compatibility with federal law and its continued viability as a state law doctrine. More specifically, I recommend that the supreme court re-examine the question of warrantless searches of closed containers in vehicles, and that the court re-align our law with the original justification for those warrantless searches — by limiting warrantless searches incident to arrest to the containers that are normally carried on the person at all times. Such a rule would not hamper the ability of law enforcement officers to search a vehicle to ensure officer safety

---

[24] *Hinkel*, 618 P.2d at 1072.

[25] *Ibid.*

[26] *Crawford*, 138 P.3d at 266 (Justice Matthews, concurring).

[27] *Ibid.*

or to prevent the removal or destruction of evidence. [28] And such a rule would re-affirm the long-standing principle that the detached scrutiny of a magistrate "is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." [29]

---

[28] *See Clark v. State*, 574 P.2d 1261, 1263 (Alaska 1978) (discussing the conditions that permit a warrantless search of a vehicle under the "destructible evidence" exception); *Fresneda v. State*, 458 P.2d 134, 143 & n.28 (Alaska 1969) (adopting the standards articulated in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), governing warrantless searches incident to arrest).

[29] *United States v. Chadwick*, 433 U.S. 1, 9; 97 S.Ct. 2476, 2482; 53 L.Ed.2d 538 (1977); *Johnson v. United States*, 333 U.S. 10, 14; 68 S.Ct. 367, 369; 92 L.Ed.2d 436 (1948).